**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 1, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JAMES P. TENNILLE; ADELAIDA DELEON; YAMILET RODRIGUEZ; ROBERT P. SMET, individually and on behalf of all others similarly situated,

Plaintiffs - Appellees,

v.

THE WESTERN UNION COMPANY; WESTERN UNION FINANCIAL SERVICES, INC.,

Defendants - Appellees.

---

SIKORA NELSON; PAUL DORSEY,

Objectors – Appellants.

Nos. 13-1310, 13-1317

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:09-CV-00938-JLK-KMT)**

---

John E. Anding (Theodore J. Westbrook with him on the briefs), Drew, Cooper & Anding, Grand Rapids, Michigan, for Objector-Appellant Sikora Nelson.

Paul Dorsey, pro se.*

---

*After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of Paul Dorsey's appeal,

Jeffrey A. Leon, Quantum Legal LLC, Highland Park, Illinois (Jamie E. Weiss, Quantum Legal LLC, Highland Park, Illinois, Richard J. Burke, Quantum Legal, LLC, St. Louis, Missouri, Jonathan Shub, Seeger Weiss LLP, Philadelphia, Pennsylvania, Seth A. Katz, Burg Simpson Eddredge Hersh & Jardine P.C., Englewood, Colorado, Jim S. Calton, Jr., Calton Legal Services, SP, Eufaula, Alabama, James E. Cecchi, Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C., Roseland, New Jersey, and Mitchell Baker, Denver, Colorado, for Plaintiffs – Appellees; Charles G. Cole and Thomas M. Barba, Steptoe & Johnson, LLP, Washington, D.C., Jason A Yurasek, Perkins Coie LLP, San Francisco, California, and Jess A. Dance, Perkins Coie LLP, Denver, Colorado, with him on the brief, for Defendants-Appellees.

---

Before **LUCERO, EBEL,** and **HOLMES,** Circuit Judges.

---

**EBEL**, Circuit Judge.

---

These appeals stem from the settlement of a class action. Two unnamed class members challenge the district court's decision to certify the class and approve the settlement. They argue, among other things, that the class representatives cannot adequately represent all of the class members; the settlement is unfair because it uses primarily the money belonging to the class to fund the settlement; and the district court did not adequately notify absent class members of the class action and the settlement. We conclude that their objections lack merit. Therefore, having jurisdiction under 28 U.S.C. § 1291, we AFFIRM the district court's decisions.

---

No. 13-1317. See Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). That appeal is therefore ordered submitted without oral argument.

## BACKGROUND

### I. Factual background

At any given time, Defendants Western Union Company and Western Union Financial Services, Inc. ("Western Union") holds over $100 million that belongs to its customers. These funds are comprised of money transfers that customers attempted to send through Western Union which failed to be delivered for some reason. The funds belong to Western Union's customers. After deducting its administrative fees, Western Union would return these funds any time that a customer requested a refund. But, while Western Union usually knows within minutes if a wire transfer fails, the sending customer is often unaware that his wire transfer failed and so does not know to ask Western Union to return his money. And Western Union, although possessing its customer's contact information, does not notify the customer that his wire transfer failed. Instead, Western Union holds the unclaimed money and earns interest on it. Eventually, after several years, the law of the state where the customer initiated the wire transfer requires Western Union to notify the customer that the unclaimed funds will soon escheat to the state. At that time, Western Union uses the contact information that it has had all along to give the customer this required notice. But often Western Union's contact information is no longer accurate. Thus, historically Western Union's customers reclaim only about 15% of the escheating funds. The rest of the unclaimed funds (minus Western Union's administrative fees) eventually escheat to the relevant state, which will continue to hold these unclaimed funds for any customer who later claims them. In the meantime, the state earns interest on the funds for itself.

**II. This litigation**

Four Western Union customers whose wire transfers failed ("Plaintiffs" or "named Plaintiffs") sued Western Union, alleging state-law claims for, among other things, conversion, unjust enrichment, and breach of fiduciary duty. As remedies, Plaintiffs sought declaratory and injunctive relief and damages.

Named Plaintiffs initiated this litigation as a class action on behalf of all Western Union customers whose wire transfers failed.[1] This class included three groups: 1) those customers who, like the named Plaintiffs, had already reclaimed their funds from Western Union; 2) those customers whose funds had already escheated to a state; and 3) those customers whose funds Western Union was currently holding. Named Plaintiffs asserted this class action under, e.g., Fed. R. Civ. P. 23(b)(3), seeking "damages designed to secure judgments binding all class members save those who affirmatively elected to be excluded," Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614-15 (1997).

The district court, before deciding whether to certify the class, made several preliminary rulings, including denying Western Union's motion to compel the named Plaintiffs to arbitrate their claims against Western Union individually. Western Union took an interlocutory appeal from that decision. See 9 U.S.C. § 16(a)(1)(A).[2]

---

[1] The district court had jurisdiction over this case under the Class Action Fairness Act ("CAFA") because there is more that $5 million at issue and at least one member of the class of plaintiffs is a citizen of a State different from the defendants. See 28 U.S.C. § 1332(d)(2)(A).

[2] That appeal, No. 11-1531, remains in the Tenth Circuit on abated status. Once the opinion in this case is issued, the parties are requested promptly to contact the Clerk of

**III. Settlement agreement**

While the interlocutory appeal was pending, Western Union and the named Plaintiffs, aided by the Tenth Circuit's mediator, negotiated a settlement of the class action. Summarizing, that settlement provides for the following: First, Western Union will change its business practices to notify its customers when their wire transfers failed. In addition, Western Union will help customers whose unclaimed funds have already escheated to a state reclaim their money from the relevant state and Western Union will pay these customers interest for the time Western Union held their funds before escheatment.

The rest of the settlement will be funded using approximately $135 million in unclaimed funds belonging to Western Union customers that Western Union continues to hold. From that fund, a neutral administrator will pay (1) an incentive award of $7,500 to each of the four named Plaintiffs; (2) interest to customers who, like the named Plaintiffs, have already reclaimed their money from Western Union, for the time that Western Union held their money after their wire transfers failed; (3) to customers whose money Western Union still holds, the unclaimed funds plus interest for the time Western Union held their money, minus Western Union's administrative fees; and (4) the costs of administering the settlement. In addition, the district court awarded 30% of this settlement fund, or more than $40.57 million, to class counsel as attorneys' fees.[3]

---

the Court to determine how that pending appeal should thereafter proceed or be dismissed.

[3] Western Union has challenged that fee award in another appeal, No. 14-1432. We express no opinion as to the propriety of the fee award in this opinion.

The settlement administrator will disburse money from the settlement fund only to class members who file claims with the administrator. The settlement obviously contemplates that many class members will not file claims because the settlement fund is comprised only of the funds from the failed wire transfers that already belong to class members. Yet the settlement uses this fund, not only to refund money from the failed wire transfers, but also to pay (1) interest to all class members, (2) the costs of implementing the settlement, and (3) attorneys' fees to class counsel. If too many class members file claims, the administrator will not be able to pay class members the full amount to which they are entitled under the settlement agreement. The record, however, indicates that this is unlikely because historically only 15% of customers reclaim money from Western Union once Western Union notifies the customers, prior to escheatment, that it is holding their unclaimed funds. If more class members file claims than the settlement fund can pay, the settlement administrator will pay class members only a pro rata share of the amount to which they are entitled. In return for these payments, either in full or pro rata, class members who do not opt out of the settlement will release Western Union from any liability stemming from its retention and use of class members' money from the failed wire transfers.

If there is any of the settlement fund remaining after paying all the claims class members file, then the administrator will place that remaining money in a cy pres fund to be distributed by the district court at its discretion. The parties suggest that the court disburse the cy pres fund among the states to which the unclaimed funds would have escheated. The settlement does not take effect until after all appeals have been resolved.

**IV. Remand for class certification and approval of the settlement**

Because the parties reached their settlement while Western Union's interlocutory appeal was pending, this court remanded the case to permit the district court to consider whether to certify the class and approve the class settlement. On remand, the district court preliminarily certified the class, defined as

> [a]ll persons (a) who initiated any Western Union Transaction in the United States on or after January 1, 2001 and on or before the date of Preliminary Approval [January 3, 2013], whose Western Union Transaction was not redeemed within 60 calendar days; and (b) who either (i) have not claimed their money transfer funds (nor had that money claimed on their behalf) from Western Union; or (ii) were informed by written communication that their money was about to escheat to the state, district, territory, or U.S. jurisdiction in which their money transfers were initiated, and who sought and received a refund of their money but did not receive a payment for interest Western Union earned on that money.

(Nelson App. at 451-52 ¶ 3.) The district court also preliminarily approved the settlement, directed that notice of the class action and the proposed settlement be sent to approximately 1.3 million putative class members, gave class members the opportunity to opt out, and gave those choosing to remain in the class an opportunity to object to the terms of the settlement. Unnamed class members Sikora Nelson, represented by counsel, and Paul Dorsey, acting pro se ("Objectors"), were among one dozen class members who objected to the settlement. After conducting a "fairness hearing," see Fed. R. Civ. P. 23(e)(2), the district court overruled all of the objections; finally certified the class; approved the settlement as fair, reasonable and adequate; and entered final judgment. Nelson and Dorsey each appeal. Although the district court required Nelson and Dorsey each to post an appeal bond of over $1 million in order to pursue their appeals, this court

reduced the amount of the bond to $5,000. See Tennille v. W. Union, 774 F.3d 1249, 1251, 1258 (10th Cir. 2014). Nelson and Dorsey each posted that bond.

## STANDING

As a threshold matter, the named Plaintiffs suggest that Objectors lack standing to raise some of their appellate arguments. As members of the class, however, each Objector has Article III and prudential standing to participate in this litigation. See Devlin v. Scardelletti, 536 U.S. 1, 6-7 (2002).

The named Plaintiffs' real complaint is that Objectors are raising new arguments for the first time on appeal that they failed to preserve in the district court. Although we "generally will not consider new arguments on appeal," DG ex rel. Stricklin v. Devaughn, 594 F.3d 1188, 1195 (10th Cir. 2010), we have discretion to do so, see United States v. Jarvis, 499 F.3d 1196, 1202-03 (10th Cir. 2007). We exercise that discretion here because we are satisfied that the arguments Objectors now raise on appeal were before the district court in some form.

## DISCUSSION

Objectors Nelson's and Dorsey's appellate arguments fall into three general categories: objections to 1) certification of the class, 2) approval of the settlement, and 3) the procedures the district court used to reach these determinations.[4]

---

[4] Nelson, represented by counsel, challenges class certification, the fairness of the settlement, the adequacy of notice sent to the class, and the district court's independent exercise of its discretion. Dorsey, proceeding pro se, adopts Nelson's argument challenging the district court's independent exercise of its discretion and offers several additional challenges to the notice sent to class members.

**I. The district court did not abuse its discretion in certifying the class**

We review the district court's decision to certify the class for an abuse of discretion. See In re Urethane Antitrust Litig., 768 F.3d 1245, 1253 (10th Cir. 2014), petition for cert. filed, (U.S. Mar. 9, 2015) (No. 14-1091, 14A665). Nelson contends that the district court should not have certified the class because the named Plaintiffs, as the class's representatives, could not fairly and adequately protect the interests of the class as a whole, see Fed. R. Civ. P. 23(a).[5]

The inquiry into whether a class representative can protect the class's interest "serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem Prods., 521 U.S. at 625. In order to protect the class's interest adequately and fairly, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Id. at 625-26 (internal quotation marks, alterations omitted). Thus, the class representatives' interest must be

[5] Named Plaintiffs, as the parties seeking certification of the class, had to demonstrate to the district court that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R .Civ. P. 23(a) (emphasis added); see also Tabor v. Hilti, Inc., 703 F.3d 1206, 1228 (10th Cir. 2013). In addition to meeting these four requirements, a class action must also be maintainable under one of the three categories of class actions set forth in Rule 23(b). See Amchem Prods., 521 U.S. at 614. The district court determined that this class action was maintainable under Rule 23(b)(3), which includes "class actions for damages designed to secure judgments binding all class members save those who affirmatively elected to be excluded," Amchem Prods., 521 U.S. at 614-15. There are a number of requirements Plaintiffs must meet before a court will certify a Rule 23(b)(3) class. Of these Rule 23(a) and (b)(3) requirements, Nelson, on appeal, contends only that named Plaintiffs failed to establish that they could fairly and adequately protect the interest of the class as a whole.

"coextensive" with the interest of the class; but this does not mean that the class representatives' "positions have to be identical" with the positions of the absent class members. 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1769, pp. 434-35 (3d ed. 2005). "Rather . . . the representatives and the class members must share common objectives and legal or factual positions . . . ." Id. "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." Id. § 1768, pp. 390.

If there is a conflict preventing named class representatives from protecting the interest of the entire class adequately, the district court has discretion to order subclasses, each with their own named representative. See id. § 1759, pp. 133-34; see also Fed. R. Civ. P. 23(c)(5). This is Nelson's argument on appeal, that the district court, before certifying the class, should have created several subclasses because the named Plaintiffs could not adequately protect the interests of all class members, for three reasons.

**A. The named Plaintiffs, but not all class members, had contractually agreed with Western Union to arbitrate their disputes**

The four named Plaintiffs' contracts with Western Union required those Plaintiffs to arbitrate any disputes they had with Western Union and to do so individually and not as a class. Not all class members had such arbitration clauses in their contracts with Western Union. Objector Nelson, for example, had no such arbitration agreement. In light of that, she contends that the named Plaintiffs cannot adequately protect her interest,

and the interest of similarly situated class members.[6]

At the time the district court certified the class, that court had already ruled that the arbitration provisions in the named Plaintiffs' contracts with Western Union were unenforceable. See Charron v. Wiener, 731 F.3d 241, 249-54 & 253 n.9 (2d Cir. 2013) (addressing adequacy of class representatives in light of district court's prior rulings, regardless of whether prior rulings were legally correct), cert. denied, 134 S. Ct. 1941 (2014); 1 Newberg on Class Actions § 3:58 (noting that, in order to prevent class representative from adequately representing class's interest, a conflict of interest "must be manifest at the time of certification").

It is true that the named parties settled the class's claims during the pendency of Western Union's interlocutory appeal challenging the district court's decision not to enforce the arbitration provisions. Had Western Union won that appeal, the named Plaintiffs could not have participated in this class action. In light of that, Nelson further argues that she, and other class members without arbitration provisions, could have negotiated a much better settlement than the named Plaintiffs.

Under the circumstances presented here, we cannot agree. The named parties acknowledge that they negotiated the settlement "in the shadow of the district court's

---

[6] Nelson raised this argument briefly during the fairness hearing before the district court. In doing so, however, Nelson argued, not that the arbitration clauses prevented the named Plaintiffs from adequately protecting the interests of the entire class, but instead that the fact that only some class members had arbitration provisions made the class settlement unfair and not reasonable. Nelson, therefore, never asked the district court specifically to certify a subclass for class members like her who had not agreed with Western Union to arbitrate disputes.

earlier ruling[]" declining to enforce the arbitration provisions, Charron, 731 F.3d at 253 n.9. But Nelson, too, had her own obstacle that might have prevented her from participating in this class action. While she had not agreed with Western Union to arbitrate disputes, Nelson had agreed not to assert any class-action claims against Western Union. Like the named Plaintiffs, then, Nelson (and class members similarly situated to her), also had an incentive to settle the class claims in order to avoid the possible enforcement of a procedural obstacle that would have prevented her from participating in this class litigation. In light of that, the named Plaintiffs' interests were sufficiently coextensive with Nelson's interests, and the interests of those class members like her, who had class-action waivers.[7]

**B. Michigan class members like Nelson can recover treble damages on their conversion claims, but the four named Plaintiffs cannot**

None of the named Plaintiffs were Michigan residents. But Objector Nelson is. She argues that a 2005 Michigan statute, Mich. Comp. Laws § 600.2919a, permits her, and class members like her who initiated failed wire transactions in Michigan after 2005, to recover treble damages from Western Union, in addition to actual damages, for conversion.[8] Nelson thus contends that, because she could have recovered much more

[7] Nelson asserts that her class-action waiver is "void as a matter of law." (Nelson Br. at 21 n.13.) But cf. Am. Express Co. v. Italian Colors Restaurant, 133 S. Ct. 2304, 2307, 2309-10 (2013) (upholding contractual waiver of class arbitration). But Nelson cites no persuasive authority to support that conclusion. The enforceability of her class-action waiver, then, like the enforceability of the named Plaintiffs' arbitration provisions, remained a contested, or at least potentially contested, issue prior to the settlement.

[8] Michigan Compiled Laws § 600.2919a specifically provides, in pertinent part, that

from Western Union than the named Plaintiffs could on their conversion claims, the named Plaintiffs could not adequately represent her interests and the interests of similarly situated Michigan class members.

At the time that the district court decided that the named Plaintiffs could adequately protect the class's interest as a whole, however, the district court had already ruled that Colorado law governed all of the class members' conversion claims. Nelson never challenged, or even acknowledged, that prior ruling when she argued to the district court that she could obtain a greater conversion recovery than the named Plaintiffs.[9] In light of that, there was no manifest conflict of interest between Nelson and the named Plaintiffs at the time the district court determined that those named Plaintiffs could

---

> (1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:
>
> (a) Another person's stealing or embezzling property or converting property to the other person's own use.
>
> . . . .
>
> (2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

An award of treble damages is discretionary under § 600.2919a, and it is left to the trier of fact to determine whether treble damages are warranted in any given case. See Aroma Wines & Equip., Inc. v. Columbia Distrib. Servs., Inc., 844 N.W.2d 727, 732 (Mich. Ct. App. 2013) (per curiam), appeal granted on other grounds, 852 N.W.2d 901 (Mich. 2014).

[9] When Nelson raised this argument in the district court, she did so, not to challenge the adequacy of the class representatives, but instead to challenge the fairness of the settlement. Nelson does not reassert that specific fairness argument on appeal.

adequately represent the class as a whole. See 1 Newberg on Class Actions § 3:58.

It was not until her reply brief filed with this court that Nelson first argued that the district court erred when it determined that Colorado law governed all of the class's conversion claims. Because Nelson waited so long to make this argument, she has waived it. See Martin K. Eby. Constr. Co. v. OneBeacon Ins. Co., 777 F.3d 1132, 1142 (10th Cir. 2015).[10]

But even if Michigan, rather than Colorado, law applied to Nelson's conversion claim, an award of treble damages is only discretionary under Michigan law. For these reasons, the district court did not abuse its discretion in determining that the named Plaintiffs could adequately protect the interests of Michigan class members.

**C. Although the named Plaintiffs already reclaimed their money from Western Union, Western Union still holds funds belonging to Nelson and other similarly situated class members**

Nelson next argues that the four named Plaintiffs could not adequately protect the interest of the entire class because the named Plaintiffs had already reclaimed their

[10] The parties agree that Colorado choice-of-law rules apply to the question of which state's law governs class members' conversion claims. The parties further agree that the relevant question, in making that choice-of-law determination, is which state had the closest relationship to the conversion claims. The district court determined that Colorado had the closest connection because Colorado is where Western Union decided, as a policy, to retain its customers' money without notifying them of failed wire transfers. In her reply brief on appeal, Nelson argues instead that the law where a class member initiated a failed transfer has a closer connection to the conversion because that is where the class member suffered the loss of the use of her money during the time Western Union kept the funds. We do not need to rule on that choice-of-law issue because it was not preserved for us on appeal. But certainly the position taken by the district court is a defensible position that would need to be considered in evaluating the parties' similar or disparate interests.

money from Western Union.[11] Therefore, in this action, the named Plaintiffs seek to recover only the interest that Western Union earned while it retained those Plaintiffs' money and the administrative fees that Western Union charged the named Plaintiffs for holding their money. On the other hand, because Western Union continues to hold money belonging to Nelson and those class members similarly situated to her, they seek to reclaim their money, plus interest and fees.[12]

This difference in circumstances between class members is not, by itself, sufficient to preclude the named Plaintiffs from adequately and fairly representing the entire class of customers whose money Western Union retained after their wire transfers failed. Western Union's challenged conduct was the same toward all class members. See 7A Wright, Miller & Kane, Federal Practice & Procedure § 1769, pp. 434-35 (class representatives' interests must be "coextensive" with the class members' interests, but need not "be identical. Rather . . . the representatives and the class members must share

---

[11] Nelson did not make this argument in the district court. Nor did Nelson ask the district court to create a subclass on this basis. Attorneys general from several states did raise this argument to the district court, but they did so to challenge the fairness of the class settlement, not the adequacy of the class representatives.

[12] On appeal, the named Plaintiffs try to bolster their ability to represent the entire class by asserting that Western Union actually continues to hold money belonging to two of the four of named Plaintiffs. But in their second amended complaint, the named Plaintiffs alleged that all four of them had already reclaimed their money from Western Union. And the named Plaintiffs do not cite to any evidence that they later presented to the district court, in response to the attorneys general's argument, that established that Western Union continued to hold funds belonging to some of the named Plaintiffs. See generally Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (holding party seeking class certification must be prepared to prove he meets all of Rule 23's class certification requirements).

common objectives and legal or factual positions . . . .”).

Nelson’s additional argument, that the named Plaintiffs negotiated a settlement that might result in Nelson and those class members who still need to reclaim their money from Western Union not recovering all of the money that Western Union is holding for them, is a challenge to the fairness of the settlement rather than to the adequacy of the named Plaintiffs’ representation. See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 113 (2d Cir. 2005). We address that fairness argument next.

**II. The district court did not abuse its discretion in approving the settlement as fair, adequate, and reasonable**

When, as here, the proposed settlement will “bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.” Fed. R .Civ. P. 23(e)(2). We review the district court’s decision to approve a class settlement for an abuse of discretion. See N. Eng. Health Care Employees Pension Fund v. Woodruff, 512 F.3d 1283, 1290 (10th Cir. 2008). In deciding whether to approve a class settlement, a district court considers whether “(1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation’s outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) [the parties] believed the settlement was fair and reasonable.” Weinman v. Fid. Capital Appreciation Fund (In re Integra Realty Res., Inc.), 354 F.3d 1246, 1266 (10th Cir. 2004).

Focusing on the second and third factors, Nelson contends that the settlement is

unfair because absent class members like her, who have not yet reclaimed their money from Western Union, will finance most of the settlement for the entire class, including paying class counsel's attorneys' fees, the administrative costs of the settlement, the incentive awards to the four named Plaintiffs, and interest to those class members who have already reclaimed their money from Western Union. Yet, depending on how many class members file claims, Nelson and similarly situated class members may not be able to reclaim the full amount of money Western Union is holding for them, money that they could have recovered simply by asking Western Union for a refund. Nelson further suggests that the settlement is unfair because Western Union gets off easy; that is, Western Union, as the alleged wrongdoer, should be funding the settlement to a greater extent than it is.[13]

We are not unsympathetic to Nelson's argument. The settlement is primarily funded by money that everyone agrees belongs to some of the absent class members like Nelson. The named Plaintiffs, who do not own any of this money, negotiated a settlement that gives almost one-third of this fund to their attorneys and further uses this money to pay themselves incentive awards, all class administrative costs, and interest to themselves and class members like them for the time Western Union held their funds. Western Union uses this fund, which it does not own, to negotiate a release of all class members' claims against it stemming from its retention of their money without telling the

[13] As previously mentioned, although Nelson did not raise this argument in the district court, several states' attorneys general challenged the fairness of the settlement on this basis in an amicus brief filed with the district court. The district court, therefore, did consider this argument before approving the settlement.

class members that their wire transfers failed. Western Union also gets to keep all of the administrative fees it charged its customers for holding their money, approximately $29 million, and most of the $19 million in interest it earned using its customers' unclaimed money. Western Union itself only has to pay interest to those class members whose property has already escheated to a state.

Nonetheless, Nelson's claim of unfairness is ultimately unpersuasive. First, even though all Nelson had to do to reclaim her money from Western Union was to ask for a refund, it is likely that, without notice of this class action, Nelson and most other similarly situated class members would not have known that Western Union was holding their money. And through the settlement, class members will recover interest for the time during which Western Union held these funds, something they would not have received simply by asking Western Union to return their money. Further, without this class action, Western Union would have had no incentive to change its business practices.

Absent the class settlement, the parties would have had to litigate a number of serious legal issues, including: 1) procedural obstacles to this class action, such as customers' agreements with Western Union to arbitrate disputes individually and to waive class-action claims; 2) Western Union's defenses, including the fact that the contracts with its customers did not require Western Union to notify them that their money transfers failed, but did require customers to pay Western Union administrative fees, and 3) the possibility of a variety of other defenses that might apply to individual customer's claims. In light of those serious disputed legal issues, the outcome of this litigation was uncertain and further litigation would have been costly.

It is true that, through the settlement, class members who do not opt out of the class will have to release all claims they might have against Western Union stemming from its retention of its customers' unclaimed money, including claims for conversion, unjust enrichment and breach of fiduciary duty. But in return class members will recover almost all of the direct damages that they would have recovered if they had succeeded at trial, their unclaimed money plus interest and a change in Western Union's business practices. The class members did not obtain, through the settlement, the return of the administrative fees that Western Union charged class members to hold their unclaimed money and damages on their claims of conversion, unjust enrichment, and breach of fiduciary duty. But that is the nature of a settlement. We cannot say that it was unreasonable for the class to agree to forego recovering those administrative fees, which were provided for in the contracts customers had with Western Union, and damages on the conversion, unjust enrichment and breach-of-fiduciary-duty claims, instead of deciding to undertake expensive litigation, with an uncertain outcome, in order to try to obtain these additional recoveries.

Moreover, the settlement provides that Nelson will have the same recovery as all other class members: her money (minus administrative fees) plus interest, and Western Union's agreement to stop this practice. This assumes, of course, that the settlement fund will be sufficient to pay all those class members who file claims. As previously mentioned, there is the possibility that, depending on the number of claims filed against the settlement fund, Nelson and other class members may not be able to recover fully. But the likelihood of that happening is not very great, given the fact that, historically,

only 15% of customers reclaim money from Western Union after Western Union notifies them that it is holding these funds. Nelson presents no evidence to the contrary. But even if class members like Nelson recoup only a pro rata portion of the money that belongs to them, it may be more than these class members would have ever reclaimed had Western Union's retention of these funds remained unknown to them until the funds were about to escheat to a state.

For these reasons, we cannot say that the district court, having considered the serious legal questions that placed the litigation's outcome in doubt and the value of the immediate recovery provided by this settlement with only the possibility of a more favorable outcome after further litigation, see In re Integra Realty Res., 354 F.3d at 1266, abused its discretion in approving the settlement as fair, reasonable, and adequate.

## III. Procedure

### A. Notice to class members

Rule 23(c)(2), Fed. R. Civ. P., "provides that, in any class action maintained under subdivision (b)(3), each class member shall be advised that he has the right to exclude himself from the action on request or to enter an appearance through counsel, and further that the judgment, whether favorable or not, will bind all class members not requesting exclusion." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173 (1974). "To this end, the [district] court is required to direct to class members 'the best notice practicable under the circumstances including individual notice to all members who can be identified through

reasonable effort.'" Id. (quoting Rule 23(c)(2)).[14] Rule 23's notice requirements are designed to satisfy due process by providing unnamed class members the right to notice of certification and settlement, and a right to be heard. See id. at 173-74. Notice, therefore, "must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id. at 174 (internal quotation marks omitted).

We review de novo questions of notice that implicate due process. See DeJulius v. N. Eng. Health Care Employees Pension Fund, 429 F.3d 935, 942-43 (10th Cir. 2005). Then, "[w]ithin the bounds of due process, . . . the form that such notice is to take is left to the discretion of the district court." Weinman v. Fid. Capital Appreciation Fund (In re Integra Realty Res., Inc.), 262 F.3d 1089, 1109 (10th Cir. 2001).

**1. Nelson's challenge to notice**

Nelson argues that the settlement notice the district court sent to class members did not fairly apprise them that, if they did not opt out of the settlement, class members would be releasing any conversion claim they might have against Western Union stemming from its retention of class members' funds from failed wire transfers. Reviewing this argument de novo, because it implicates due process, see DeJulius, 429 F.3d at 942-43, we reject it.

The notice sent to putative class members informed them generally that, if they did

[14] Rule 23(c)(2)(B) requires the district court to give class members notice of the class action, including the claims and issues involved and the fact that the judgment will bind class members who do not opt out. In addition, Rule 23(e)(1) requires the district court to give class members notice of a proposed class settlement "in a reasonable manner."

not opt out, they would "give up [their] right to sue Western Union for the claims that this settlement resolves" and they "won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Western Union about the legal issues in this case ever again." (Nelson App. at 466, 469.) The notice further explained that this "lawsuit claims that Western Union did not timely notify its customers that their Western Union Transactions were not redeemed by the receivers to whom Western Union Transactions were sent, and as a result caused harm to their customers." (Id. at 462; see also id. at 461 ("This settlement involves a lawsuit over whether Western Union . . . timely notified its customers of unredeemed Western Union Transactions in the United States using Western Union's money transfer services.").) The notice, thus, adequately apprised putative class members of the nature of the claims at issue. See Gooch v. Life Investors Ins. Co. of Am., 672 F.3d 402, 423 (6th Cir. 2012) (stating that, in order to satisfy due process, "[a]ll that the notice must do is fairly apprise prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests") (internal quotation marks, alterations omitted); see also 7AA Wright, Miller & Kane, Federal Practice & Procedure § 1787, pp. 511-12 (stating that Rule 23's notice requirements are satisfied if the notice gives Rule 23(b)(3) class members "sufficient information about the specific lawsuit to allow a class member to assess whether to exercise the right either to appear or to opt out").[15]

[15] Nelson's argument to the contrary is that this language failed to tell class members that the litigation involved, not only untimely notice, but also conversion; that is, Western

Moreover, the notice informed putative class members how to obtain more information about the settlement, directing them to the class settlement website, where they could get a copy of the Settlement Agreement, which explained that, if class members did not opt out of the settlement, they would release Western Union from liability for any claim that class members could have asserted based on the subject matter of the class litigation and settlement. The notice also told class members that, if they had "questions about the Released Claims and what they mean," they could call and speak to class counsel for free, or they could speak to their own attorney at the class member's expense. (Nelson App. at 470.) This notice satisfied due process by informing class members of several ways they could obtain additional information about the claims that they would be releasing if they joined the settlement. See Gooch, 672 F.3d at 424 (holding that notice "met the due-process baseline" by providing "potential class members an address, phone number, and website with which to obtain more information about the proposed settlement") (internal quotation marks, alterations omitted).

**2. Dorsey's challenges to notice**

Dorsey's objections to the class settlement involve challenges to how notice was

---

Union's improper use of these funds for its own gain. In support of his argument, Nelson relies upon Twigg v. Sears, Roebuck & Co., 153 F.3d 1222 (11th Cir. 1998). But that case is inapposite. There, the notice informed putative class members—described as those who had bought automotive repair services from Sears during a specified time period—that the class action involved "unnecessary and/or improper repairs" that violated state and federal law. Id. at 1228 (emphasis omitted). The Eleventh Circuit held that such notice was ineffective to inform class members that any claim for Sears billing them for services never performed was also included in the settlement, especially because the proposed class settlement did not provide any relief for such billing claims. Id. There is no analogous problem with notice in this case.

sent to putative class members.[16] The district court directed that notice be sent to putative class members in several ways: 1) mailed to class members using updated addresses obtained from Western Union or class counsel; 2) emailed to those class members whose email address the settlement administrator had; and 3) published in several magazines. In addition, as previously mentioned, the settlement administrator established a website dedicated to the class settlement, from which class members could gain information and have their questions answered. The class administrator estimated that, after executing this notice plan, "[i]ndividual [n]otice reached 89.5% of the Settlement Class," and notice in some form "reached approximately 92.9% of all Western Union customers (and therefore the Class), an estimated average of 1.4 times."[17] (Dorsey App. at 1213.) Nevertheless, Dorsey argues that the manner in which notice was sent to class members was inadequate, for the following reasons:

**a. Mailed notice was inadequate**

The district court ordered notices to "be mailed via first-class mail to the last-

[16] As part of his arguments about notice, Dorsey also contends that class counsel inadequately represented absent class members by not providing better notice to more class members and by not responding to Dorsey's objections to the manner in which notice was sent to the class.

[17] Dorsey complains that he was never able to review a copy of the "Notice Plan." While the settlement agreement required the named parties to provide the district court with a "Notice Plan" at the time they asked the court preliminarily to certify the class and approve the class settlement, it does not appear that the named parties in fact provided the district court with a specific notice plan. After notice was sent and after the deadline by which Dorsey had to file his objections, the named Plaintiffs reported to the district court how the administrator actually sent notice to class members. The question we address here is whether the notice actually sent to class members was adequate.

known mailing addresses of the putative Class members . . . for whom Western Union has contact information in their own databases." (Nelson App. at 409 ¶ 3.D.3.) Class counsel reported to the court that notices were actually mailed "to all addresses associated with transactions included in the Class definition." (Dorsey App. at 1217 ¶ 22; 1215 ¶ 18.) Dorsey contends that mailing notice only to addresses "associated with" the failed wire transactions was inadequate; rather, Dorsey argues that the district court's order to mail notice to the last known address of class members required Western Union to cross-check all of its databases to determine if it had a more recent address for each class member than the address "associated with" the failed wire transfer.

The named Plaintiffs suggest, as a factual matter, that Western Union did cross-check its databases before turning the addresses over to the class administrator. But even assuming Western Union did not cross-check its databases, the class administrator updated the addresses it received from Western Union using the post office's change-of-address database. Dorsey has not shown that updating the addresses in this manner provided less notice than had Western Union cross-checked its databases. Cf. In re Integra Realty Res., 354 F.3d at 1261 (upholding previous determination that mailed notice was adequate, in light of appellants' failure to show that "another reasonable method of supplementing the . . . mailing list would have significantly increased the number of notices actually received"). Ultimately, Rule 23(c)(2) mandates that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." See Eisen, 417 U.S. at 176. We are satisfied that the notice mailed to class

members in this manner did not violate Rule 23 nor deprive the absent class of due process.

**b. Notice may not have been sent to class members whose funds held by Western Union were "zeroed out" by the administrative fees Western Union charged**

Dorsey next speculates, without specifics, that notice may not have been sent to putative class members whose administrative fees exceeded the amount of money Western Union was holding for them. But the district court preliminarily certified the class to include

> [a]ll persons (a) who initiated any Western Union Transaction in the United States on or after January 1, 2001 and on or before the date of the Preliminary Approval [January 3, 2013], whose Western Union Transaction was not redeemed within 60 calendar days; and (b) who . . . (i) have not claimed their money transfer funds (nor had that money claimed on their behalf) from Western Union . . . .

(Dorsey App. at 144 ¶ 3.) The court further directed that notice be sent to all such class members "who can be identified with reasonable effort." (Id. at 147 ¶ 9.b.) That order included the "zeroed out" class members. Further, class counsel presented evidence that notice in this regard was sent out as the district court ordered. And, in finally certifying the class and approving the settlement, the district court found "that notice has been given to the Class in the manner approved by the Court in its Preliminary Approval." (Id. at 1563 ¶ 7.) On that basis, it appears that notice was sent to the "zeroed out" class members. Dorsey offers no evidence to the contrary.

**c. Defective notice chilled class members' objections to the settlement**

The district court ordered that the notice to class members state, in pertinent part,

that an "objecting Class member must . . . agree to sit for deposition, within the County in which he, she, or it resides, within 14 calendar days after serving such objection." (Nelson App. at 422 ¶ 8.a, 456 (emphasis added).) But the notice actually sent to individual class members told them, instead, that objectors "must be willing to agree to sit for a deposition, within the county or state in which you reside." (Id. at 468 (emphasis added).) Dorsey contends that this error in the notice kept class members from large states from objecting to the settlement because those class members would have been concerned that they might have to sit for a deposition at a greater distance (and expense) from their home.[18]

Dorsey brought this error in the mailed notice to class counsel's attention, after which the named Plaintiffs and Western Union agreed that an objector's deposition could be taken "anywhere within the state in which the putative Class member resides, at the objector's option" (Dorsey App. at 172-73 (emphasis added)). Because the notice mailed to individual class members did not tell them this, however, Western Union and the named Plaintiffs further agreed to provide this information on the settlement website under the heading "Frequently Asked Questions" and to inform all call center agents to clarify this information for putative class members who called with questions. Dorsey claims, however, that class counsel dawdled, failing to post this correction on the website

[18] Neither Rule 23(c)(2) nor 23(e) expressly requires notice to class members regarding how and when they can object to a class settlement. Nevertheless, failure to tell class members of their right to object could arguably deprive them of the due process requirements of notice and an opportunity to be heard. See Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1187 (10th Cir. 2002) (noting, in class action, that "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner") (internal quotation marks omitted).

in a timely manner and never correcting the Spanish-language version of the website. Even so, we cannot conclude that this notice problem materially affected class members' exercise of their right to file objections. We are satisfied that the notices mailed to class members "were sufficient to flush out any objections that might arise to the fairness of the settlement." DeJulius, 429 F.3d at 946. And there is no evidence suggesting that anyone who wanted to object was chilled from doing so. Dorsey's argument, therefore, is too speculative.

**d. Email notice was inadequate**

Dorsey received mailed notice of the class action and proposed settlement, but he claims that he also should have received this notice by email because he gave Western Union his email address at the time he sent his failed wire transfer. Yet Dorsey claims that he did not receive any email notice of the class action and settlement. This, Dorsey suggests, means there was something wrong with the email notice that the class administrator sent to the entire class. But the fact that one class member—Dorsey—did not receive one version of the notice that the plan was designed to give does not, by itself, establish that the entire notice plan was inadequate. See DeJulius, 429 F.3d at 946-47. And even if there were deficiencies in sending notice via emails, those emails only supplemented the mailed notice. And the mailed notice was sufficient to provide "the best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(b)(2)(B). Cf. In re Integra Res., 262 F.3d at 1109 (holding in that case that mailing notice to "all class members whose names were then known or could be identified through reasonable

effort" satisfied due process).

**B. District court's exercise of its independent judgment**

Finally, both Nelson and Dorsey argue that the district court failed to exercise its independent judgment when it certified the class and approved the settlement. In support of their argument, Nelson and Dorsey first point to the fact that the district court, in preliminarily and finally certifying the class and approving the settlement, adopted verbatim orders drafted by the named Plaintiffs and Western Union. This practice is not favored; it can result in an overly- or underly-inclusive ruling and can create the perception of a lack of judicial independence which harms the judiciary. Nonetheless, the fact that the district court adopted the order drafted by the parties, alone, does not establish that the district court failed to exercise its judgment independently. See Anderson v. Bessemer City, 470 U.S. 564, 572 (1985). When, as here, the district court adopts verbatim a proposed order resolving matters left to the court's discretion, this court must satisfy itself that the district judge actually "exercised his discretion" by considering the factors relevant to "that exercise." N. Eng. Health Care Employees Pension Fund, 512 F.3d at 1290. We are satisfied that the district court, in certifying the class and approving the class settlement, considered the relevant factors and actually exercised its discretion independently. See id.

Nelson and Dorsey next contend that the district court failed to exercise its independent judgment in denying their objections to the class settlement. The order approving the settlement, which was proposed and drafted by the named parties, stated only that "[t]he Court has considered the objections to the Settlement and hereby

overrules them." (Dorsey App. at 1594 ¶ 10.) But at the fairness hearing, after hearing argument from the named Plaintiffs, Western Union and Objector Nelson, the district court briefly addressed and rejected Nelson's objections. That is sufficient for this court to conclude that the district court independently exercised its judgment in denying Nelson's objections.[19]

Unlike Nelson, whose attorney appeared at the fairness hearing, Dorsey, acting pro se, submitted only written objections. The district court, at the fairness hearing, acknowledged receiving Dorsey's written objections, "overruled" written objections raised by several other objectors "for the reasons stated in the plaintiffs' memoranda," and then overruled Dorsey's objections without further comment. (Dorsey App. at 689, 706-07, 709.) This practice is also not favored. Nevertheless, we upheld a similar disposition of objections to a class settlement in In re Integra Realty Resources, Inc., noting that, "while more extensive explanation by the district court may have been helpful to our review, we will not overturn the district court's decision on the basis of a 'merely formal' deficiency as long as the decision finds support in the record." 354 F.3d at 1268. In Integra Realty, the district court had before it the settling parties' memoranda supporting the settlement and the written objections to the settlement, and the court heard argument before rejecting the objections; "[t]he record thus indicates that the district

[19] The district court, in rejecting Nelson's objections, mistakenly stated that it had previously dismissed the class's conversion claims. That does not prevent us from concluding that the district court independently exercised its discretion in denying Nelson's objection. Nor can we conclude that that mistake adversely affected the district court's certification of the class and approval of the class settlement.

court was aware of all the issues that appellants now argue should have been considered when determining the settlement's fairness." Id. at 1268-69. For similar reasons, we conclude that the district court exercised its independent judgment in this case when it denied Dorsey's written objections.[20]

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's decisions to certify the class and approve the class settlement.

[20] In reaching this conclusion, we distinguish New England Health Care Employees Pension Fund v. Woodruff, 512 F.3d 1283 (10th Cir. 2008). In that case, the district court overruled objections to a class settlement "based on the reasons stated, arguments advanced, and authorities cited by [the defendant] in its reply." Id. at 1290 (internal quotation marks, alteration omitted). In that case, this court concluded that the district court's ruling was "insufficient," holding that, "[w]hen it comes to page after page of complex legal argument, we need to know what path the district court followed." Id. In that case, the defendant's reply to which the district court referred was twenty-one pages long with 139 pages of exhibits and was only "argument . . . not intended to represent any findings or conclusions for an appellate court to review." Id. Here, on the other hand, the named Plaintiffs' memoranda opposing all of the objections to the settlement dedicated five discrete pages to Dorsey's objections, so we can much more easily determine the reasons the district court rejected Dorsey's objections.